JOHN H. HARDY vs. JAMES O. SAFFORD & another.

Essex.  Nov. 2, 1881. — March 2, 1882.  MORTON, C. J., W. ALLEN &
C. ALLEN, JJ., absent.

If land of a debtor, unincumbered by mortgage, is attached on mesne process, and
afterwards seized under the Gen. Sts. c. 103, upon an execution issued on a
judgment, and the officer suspends proceedings for more than two months on
account of a prior attachment existing on the land, and, after the dissolution
of the attachment, gives notice to the debtor of a sale of the land, under the
St. of 1874, c. 188, the levy will be deemed to have been made at the time
of such notice, and is ineffectual as against a title acquired by deed from the
debtor recorded after the judgment, and before the notice of sale is given.

LORD, J.  The demandant claims title to the land sued for
by virtue of the levy of an execution upon which a sale of the
demanded premises had been made, which sale he claims vested
in him a valid title under the St. of 1874, c. 188.  The writ
upon which such execution issued was against Edward W.
Jacobs, and was dated March 4, 1880, and the judgment was
recovered thereon June 24, 1880.  The tenant claims title under
a deed from said Jacobs made on October 30, 1878, for a valua-
ble consideration, which deed was not recorded until July 3,
1880, and of which the demandant had no actual notice until
the record; and the precise question submitted to us is whether
the levy was, upon the facts of this case, a valid levy.  If so,
there appears no reason why the demandant is not entitled to
recover possession of the land.

A judgment creditor has a right to retain the lien created by
the attachment thirty days after judgment in order to levy his
execution upon the attached property; but if the execution is
not levied within the thirty days, his attachment is dissolved.
It is not necessary that the levy shall be completed within
the thirty days, but it must be begun within the thirty days,
and, in case of levy by extent, the levy is by law deemed to
have been made when the land attached is seized upon execu-
tion.  Gen. Sts. c. 103, § 24.  The section is in these words:
" The officer, after taking the land on execution, shall give
notice thereof to the debtor, if found within his precinct, allow
him a reasonable time to appoint an appraiser, and then pro-
ceed without unnecessary delay to have the estate appraised and

complete the levy thereon. The levy shall be considered as made at the time when the land is taken; and the subsequent proceedings and officer's return shall be valid, although made and done after the return day, or after the removal or other disability of the officer."

By this section, it is apparent that the levy is considered as made when the officer seizes the land, provided the proceedings in completing the levy are conducted properly and with reasonable despatch. The officer, after commencing the levy, may suspend his proceedings if there be existing a prior attachment. Gen. Sts. *c.* 133, §§ 50, 51. In this case, there was a prior attachment upon the same land, made by one Parsons upon a suit then pending against the said Jacobs; and, by reason of such prior attachment, the officer, on July 7, 1880, seized the same and suspended further service of the execution, and filed a copy of said execution, with the return of such seizure, and took no further step towards the service thereof until September 15, 1880, said prior attachment having been dissolved on September 14, 1880.

The land was unincumbered by any mortgage; and, prior to the statute of 1874, there was no power to levy an execution upon unmortgaged land, except by extent. By that statute, a levy was authorized to be made upon land unincumbered by mortgage by a sale of the same; and the officer proceeded to sell the land under the provisions of that statute, and no notice was given to said debtor of said levy or of said proposed sale until September 15. By the St. of 1874, *c.* 188, it is provided that such lands may be sold on execution, in the same manner as the right of redemption of mortgaged lands may be sold on execution; and " the officer who serves the execution shall proceed in all respects in the manner prescribed for the sale of such right of redemption; " and the language of the second section of that act is, " All the provisions of law relating to the sale of rights of redeeming mortgaged lands on execution shall be applied, so far as they may be applicable, to sales made under the first section of this act." See *Woodward* v. *Sartwell,* 129 Mass. 210.

It will be seen that the modes of proceeding in the two cases are entirely different. When the levy is by extent, the estate

must be appraised, and the debtor, if practicable, is to be notified of the appraisal, and to have opportunity, if he elects to do so, to appoint one of the appraisers. In the case of levy by sale, there are to be no appraisers, and the sale is to be made after notification as prescribed by statute.

It is clear that this provision is applicable to a levy by sale of lands not mortgaged, and it is also clear that the officer proceeded under the same; and we think that the same provision of law is recognized in this proceeding, that the levy is deemed to have been made at the commencement of proceedings under the execution, as in the case of levy by extent; and that the notice to the debtor of the proposed sale is equivalent to the seizure for levy by extent; and it is therefore provided that the levy shall be deemed to have been made at the time of first giving the notice. This, as before stated, was on September 15, 1880. Now, although the officer had in his hands an execution the service of which he had begun and might have completed, if the creditor had so elected, and made a valid levy, yet he did not do so; but he made his levy in law on September 15, instead of a levy which he might have made on July 7, which levy would have held the estate attached on the original writ of March 4, 1880. The levy was not made within thirty days from the rendition of the judgment. If he had intended to levy by sale, he might have continued his action for judgment, preserving his original attachment, until prior attachments had been dissolved or satisfied. Whether a notice of sale issued at the time when he seized the land on execution, and subsequent postponements of the sale, if necessary, would have preserved his rights, it is unnecessary to inquire, for no such notice was given. Whether the language of the Gen. Sts. c. 133, §§ 50, 51, would be applicable to a case of this kind, need not be considered. At the time of the passage of that act, there could be no sale on execution of real estate not mortgaged, and although the language of that act is, that, if there be a prior attachment of the same estate and the proceedings under said execution whether by extent or sale be suspended by reason of such prior attachment, the estate shall remain bound by such seizure, &c., it will be observed that this statute applies to the seizure of real or personal property, and as the levy on real property

must have been by extent, and the levy on personal property must have been by sale, at that time, the words "set off or sold" would probably be limited to the kind of service which was authorized by those words.

But it is not necessary to speculate upon what construction a change of the law would require to be given to this language, because the plaintiff has elected to make a levy which had no force as a levy until September 15, 1880. His levy, therefore, was not made until much more than thirty days after the judgment, and his attachment was dissolved. In the mean while, the tenant had acquired a valid title, by recorded deed, and the decision of the Superior Court was right, that there must be

*Judgment for the tenants.*

*J. H. Hardy*, pro se.
*S. B. Ives, Jr.*, for the tenants.